ESTATE OF Bernard W. PECHAN,
Deceased, Bernard Warren Pechan,
Administrator, Plaintiff,

v.

UNITED STATES of America, et
al., Defendants.

No. 86 CV 1471.

United States District Court,
E.D. New York.

June 14, 1988.

Murray Rudman, Southhampton, N.Y., for plaintiff.

Richard Prendergast, U.S. Dept. of Justice, Tax Div., for defendants.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

This is an action under the Internal Revenue Code of 1954, as amended, 26 U.S.C. § 7422, for refund of a tax overpayment. *See* 28 U.S.C. § 1346(a)(1). Defendants move to dismiss the Complaint for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). Defendants move, in the alternative, for summary judgment. Fed.R.Civ.P. 56(b).

## FACTS

The parties and this dispute are certainly not strangers to the federal judicial system. Over the past eleven years, the issues in this case have been placed twice before the United States Tax Court, before the federal district court for this district, and before the United States Court of Appeals for the Second Circuit. Cloaked in a different theory, plaintiff's claim has returned to this district.

The odyssey began in July 1977, when the Internal Revenue Service ("IRS") issued a notice of estate tax deficiency to the plaintiff, the Estate of Bernard W. Pechan. Plaintiff timely petitioned the Tax Court for a reduction in the deficiency. On February 25, 1980, the plaintiff made the last of a series of payments on the deficiency. Upon stipulation of the parties, the Tax Court found that the plaintiff had actually

overpaid estate taxes by $27,434.75. The order further provided that upon entry of the order, plaintiff "waives the restrictions contained in [26 U.S.C. § ] 6213(a) prohibiting assessment and collection of the deficiency (plus statutory interest) until the decision of the Tax Court has become final." The order was entered on October 9, 1980.

The IRS subsequently informed the plaintiff that it owed interest on the interim underpayment of the tax. In a letter dated July 27, 1981, plaintiff's attorney stated to the IRS:

> The result of the settlement [before the Tax Court] was not to establish as your office intimates a net difference between the overage and your estimate of administrative expenses which difference would be at once determinable. The settlement envisioned some interest differences which would affect the amount of the refund. And these were to be later determined.... [Y]ou said the figures had not been arrived at but you believed it would result in a refund of several thousand dollars and I felt it should approach the amount of the overpayment. We agreed to wait and see. Now, your office says the amount of the refund was fixed to the date of settlement to be $149.96. It is so clear that the reply is in error and I am sure you do not support that error.

The IRS eventually calculated the interest owed, subtracted this amount from the overpayment, and paid plaintiff $13,290.

Plaintiff promptly brought in this district a petition for writ of mandamus to order the Commissioner of the IRS to pay plaintiff the full $27,434.75. Plaintiff's argument was that the parties' settlement in the Tax Court disposed of any claim for interest by the IRS. The Court eventually granted the IRS's motion for summary judgment, without prejudice to the plaintiff's right to petition the Tax Court for enforcement of the settlement order.

Shortly thereafter, plaintiff brought such a petition. The Tax Court held that, while it had jurisdiction to compute the over-payment, it did not have authority to calculate offsets or order refunds.

Plaintiff appealed the decisions of the district court and Tax Court to the United States Court of Appeals for the Second Circuit. The appeals were consolidated and the judgments affirmed in a summary order entered pursuant to 2d Cir.R. 0.23. The order noted that the proper method to compel payment was to sue for a refund. It concluded that the Tax Court had no jurisdiction over such a suit, and that the mandamus action was not cognizable as such a suit. The court concluded:

> Were the equities in this case more compelling, we might hesitate to bar the [plaintiff's] claim on such technical grounds, expecially where the district court or the IRS, given their greater familiarity with tax procedure, could have avoided the problem here by suggesting that the mandamus petition be treated as a claim for a refund. However, a letter in the record sent by [plaintiff's] counsel dated July 27, 1981, indicates plainly that counsel was aware that interest owed on the unpaid tax would be set off from the overpayment and that only the balance would be refunded. That the balance turned out to be less than the [plaintiff] would have liked does not persuade us that any injustice has been done.

Shortly after the decision, plaintiff filed the instant Complaint. Not surprisingly, it seeks a refund of the balance of $27,434.75. Three defendants are named: (1) the United States of America; (2) the United States Treasury Department ("Treasury Department"); and (3) the Commissioner of Internal Revenue ("Commissioner").

Defendants move to dismiss the Complaint on several grounds. Their first argument is that the Treasury Department and the Commissioner are not proper parties to the suit. The second argument is that plaintiff has failed to meet the jurisdictional prerequisites for commencing a refund suit. The third ground is that principles of res judicata bar plaintiff from relitigating the issue whether plaintiff owes interest for the period in which a deficiency

existed. Finally, defendants argue that they are entitled to summary judgment because federal law provides that interest must be paid on tax underpayments.

## DISCUSSION

■ The statute that authorizes civil actions for tax refunds is found at 26 U.S.C. § 7422. It expressly provides that such suits may be "maintained only against the United States." *Id.* § 7422(f)(1). There is no statutory authorization for a refund suit against either the Commissioner, *see Tickel v. Commissioner*, 623 F.Supp. 218, 219 (E.D.Tenn.1986); *Kral v. Commissioner*, 348 F.Supp. 538, 540 (E.D.N.Y.1972), or the Treasury Department, *see McCullough v. Secretary of Treasury*, 621 F.Supp. 750, 752 (N.D.Miss.1985). Accordingly, the Complaint must be dismissed as against these two parties.

■ As a prerequisite to bringing suit for a refund, the claimant must pay the assessment and file a refund claim with the appropriate agency within three years from the filing of the tax return or two years from payment, whichever is later. 26 U.S.C. §§ 6511(a), 7422(a); *see Arch Engineering Co. v. United States*, 783 F.2d 190, 190 (Fed.Cir.1986) (dictum). The claim must set forth with specificity the grounds on which a refund is sought. 26 C.F.R. § 301.6402–2(b). Suit may be brought if the agency has not rendered a decision within six months of the filing of a claim, and must be brought within two years of the mailing of a notice of denial of the claim. 26 U.S.C. § 6532(a)(1). Under the doctrine of sovereign immunity, jurisdiction over a refund case is lacking unless a refund claim has been submitted to the agency. *Oldland v. Kurtz*, 528 F.Supp. 316, 322 (D.Colo.1981); *Hansen v. United States*, 455 F.Supp. 1367, 1369 (W.D.Mo. 1978); *see Arch Engineering Co.*, 783 F.2d at 190–91 (dictum); *Altman v. Connally*, 456 F.2d 1114, 1115–6 (2d Cir.1972) (per curiam).

Defendant argues at great length that plaintiff is barred from commencing this action because it has failed to file a refund claim. On appeal to the Second Circuit, however, appellees took the opposite position. They argued that a letter sent by plaintiff's counsel dated July 8, 1981 "constituted a valid claim for refund and paved the way for a suit for refund in the district court." Brief for Appellees at 13–14, *Estate of Pechan v. United States Treasury Department*, Nos. 84–6069, 85–4171 (2d Cir.). The Second Circuit apparently was persuaded by this reasoning because it observed that the district court could have converted the mandamus proceeding into a claim for refund and rendered a decision on the merits. It follows, *a fortiori*, that that court would have had jurisdiction to decide a refund action if it had been denominated as such by plaintiff.

■ After reviewing the letter dated July 8, 1981, I am satisfied—as were appellees—that it was an adequate notice of claim under the relevant statutes and regulations. *See Disabled American Veterans v. United States*, 650 F.2d 1178, 1180 (Ct. Cl.1981) (per curiam), *aff'd*, 704 F.2d 1570 (Fed.Cir.1983). Accordingly, I conclude that the Court has jurisdiction to decide this case.

Defendant's next argument is that res judicata bars relitigation of "any issue other than whether the Internal Revenue Service was entitled to offset its liability for unpaid interest against overpayment." Defendant's Memorandum of Law at 16. I need not attempt to decipher this cryptic statement because the issue in this case is whether such an offset was permissible.

■ Defendant's final argument is that it is entitled to summary judgment because the tax code mandates collection of interest for underpayments and provides that these amounts may be offset from overpayments. *See* 26 U.S.C. §§ 6402(a), 6601(a).

Plaintiff does not dispute the authority to offset, but argues that no offset should be permitted here because the parties agreed that plaintiff would not owe interest on underpayments subsequent to the Tax Court's settlement order.

Plaintiff has failed, however, to submit any evidence to support this assertion. As

the Second Circuit observed, plaintiff was aware in 1980 that there would be an offset. After a thorough review of the record, I conclude that there is no issue of fact as to whether plaintiff was required to pay interest on the underpayment. Accordingly, summary judgment must be entered in favor of defendant.

## CONCLUSION

For the foregoing reasons, the motion to dismiss the Treasury Department and Commissioner as defendants is granted. The other motions to dismiss are denied. The United States' motion for summary judgment to dismiss the Complaint is granted.

SO ORDERED.