**George Gordon BONNYMAN and Isabel A. Bonnyman,**

v.

**UNITED STATES of America,**

No. 3161.

United States District Court
E. D. Tennessee, N. D.

Sept. 3, 1957.

Fowler, Rowntree & Fowler, Knoxville, Tenn., for plaintiffs.

John C. Crawford, Jr., U. S. Atty., Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

Plaintiffs have sued the Government for a refund of income taxes for the year 1954. The claim grew out of the disallowance of an attorney's fee by the Internal Revenue Service and paid by plaintiff Gordon Bonnyman in 1954. The amount of the attorney's fee was $3,487.61 for services rendered by S. Frank Fowler, Esq., in connection with contesting and settling a claim for deficiency in a gift tax return filed by Frances Bonnyman, donor, and mother of Gordon Bonnyman, donee. The gift that was involved consisted of 410 shares of stock in the Blue Diamond Coal Company. The gift was made in the year 1948. The gift tax return filed by the donor valued the stock at $100 per share but the Government, in auditing the return, put a valuation on it of $275 per share. Gordon Bonnyman was interested in reducing the valuation placed on the stock by the Government because a lien was created by law in favor of the Government against the stock for the gift tax and the increased valuation of the stock by the Government created a deficiency problem in relation to the stock. Gordon Bonnyman was also interested in reducing the value of the stock because he and his mother and father owned other stock in the Blue Diamond Coal Company and the increased valuation of the stock by the Government created estate tax problems as well as deficiency problems. At the time of the gift Frances Bonnyman was around 70 years of age and the record indicates that her husband, Alexander Bonnyman had reached the retirement age, or near the retirement age, in business. He was President of the Blue Diamond Coal Company at the time of the gift but Gordon Bonnyman became President before the deficiency was assessed. The father, mother and son were large stockholders in the Blue Diamond Coal Company.

Plaintiffs insist that the payment of the attorney's fee to Mr. Fowler should have been allowed as a deduction because it was an "ordinary and necessary" expense incurred in connection with the tax upon which not only Frances Bonnyman, donor, was liable but upon which plaintiff Gordon Bonnyman, donee, was

liable and to secure which a lien existed against the stock acquired by Gordon Bonnyman.

Plaintiffs say further that the deduction should have been allowed because the attorney's fee was a "necessary and ordinary" expense incident to the conservation and protection of property.

Plaintiffs' contentions are based on sub-sections 2 and 3 of section 212 of the 1954 Internal Revenue Code. The parties stipulated in the pre-trial order that the 1954 Code determines the question of deductibility of the attorney's fee that is the subject of the suit.

The Government contends that Gordon Bonnyman was not entitled to deduct the attorney's fee from his earned income because such fee was the legal liability of his mother, Frances Bonnyman; that the fee was paid in 1954 and the gift tax deficiency was assessed and paid in 1954, and that Gordon Bonnyman was not liable for the gift tax liability when the fee was paid, inasmuch as such liability had been settled; that there was no lien covering the property given to him in 1948.

The Government further contends that the attorney's fee was not an "ordinary and necessary" expense paid or incurred during the year 1954 within the meaning of section 212 of the 1954 Internal Revenue Code.

The Government contends further that the attorney's fee was not deductible under sub-section 3 of section 212 of the 1954 Code because the fee was not incurred in connection with any contested tax liability asserted against Gordon Bonnyman.

The record clearly shows that Fowler was employed to contest the gift tax deficiency assessed against Frances Bonnyman by Gordon Bonnyman and that by reason of such employment Gordon Bonnyman was obligated to pay the attorney's fee. Fowler had his first conference with Gordon Bonnyman about the gift tax on April 14, 1952, at which time he was told that Miss Hood, an employee of the Blue Diamond Coal Company, was available for such information as he needed in preparing to contest the alleged excessive valuation placed on the stock by the Government.

Fowler started to work on the case at that time, although the terms of employment had not been agreed upon. Twelve days later, or on April 26, 1952, the amount of the fee was stated and Gordon Bonnyman advised that he would talk with his father and let Fowler know whether the amount was acceptable. Bonnyman advised Fowler on the same date that the amount of the fee was acceptable and delivered to Fowler his personal check in the amount of $1,500. This part of the fee is not involved in the suit. Fowler was of the opinion that the contest of the assessment before the Treasury Department would have to be instituted in the name of Frances Bonnyman, the donor, and that he would have to obtain her power of attorney and a written fee agreement under the rules of the Treasury Department. He accordingly obtained the power of attorney and the written fee agreement, both of which are filed as part of the record, in the name of Frances Bonnyman, although Gordon Bonnyman, donee, employed him and was therefore obligated to pay the attorney's fee.

Frances Bonnyman, a lady of 79 years of age at the time she testified, was not consulted about the case. She was not interested in contesting the valuation placed upon the stock by the Government. Her husband, Alexander Bonnyman, and son, Gordon Bonnyman, decided to file a contest. The authority to settle with the Government was obtained from Gordon Bonnyman by Fowler. The bill for the payment of the fee, which was based on the amount saved on the deficiency assessment, was made out to Frances Bonnyman because the contract was made out in her name but the letter enclosing the bill was mailed to Gordon Bonnyman. Frances Bonnyman's name was used in the power of attorney and the attorney's fee agreement simply to comply with the rules of practice formulated by the Treasury

Department. The bill for the balance of the attorney's fee in the amount of $3,487.61 was made out in her name as a routine matter because the contract for the amount of the fee was made in her name.

As previously indicated, plaintiffs rely on 26 U.S.C. § 212, which is as follows:

"In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

"(1) for the production or collection of income;

"(2) for the management, conservation, or maintenance of property held for the production of income; or

"(3) in connection with the determination, collection, or refund of any tax."

More specifically, plaintiffs rely on the second and third provisions of the foregoing section.

Section 1009 of the Internal Revenue Code of 1939, 26 U.S.C. § 1009, which was in effect at the time the gift was made and at the time Mr. Fowler was employed, provides as follows:

"The tax imposed by this chapter (Gift tax) shall be a lien upon all gifts made during the calendar year, for ten years from the time the gifts are made. If the tax is not paid when due, the donee of any gift shall be personally liable for such tax to the extent of the value of such gift."

Treasury Department Regulations 108, Section 86.58 supplements the foregoing Section of the 1939 Code as follows:

"Claims in cases of Transferred Assets.—The amount for which the transferee of the property of a donor is liable, at law or in equity * * * in respect of the tax, whether such tax is shown on the return of the donor or determined as a deficiency, shall be assessed against such transferee * * * and collected and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in the tax, except as hereinafter provided.

"The term 'transferee' as used in this section includes among others a donee, heir, legatee, devisee and distributee."

The foregoing statute and regulation make the donee liable for a gift tax.

Section 1012 of the Internal Revenue Code of 1939, 26 U.S.C. § 1012, makes the donor also liable for the gift tax and provides for the method of assessment and collection of deficiencies.

Section 1025 of the same Code, 26 U.S.C. § 1025, provides for the method of collection of the tax from the donee.

The lien on the stock in favor of the Government to secure the payment of the deficiency tax was sufficient, aside from all other considerations, to cause Gordon Bonnyman to be vitally interested in the increased valuation placed on the stock by the Government.

Sub-section 3 of Section 212 of the 1954 Code allows an income tax reduction to an individual for the "ordinary and necessary" expenses paid or incurred during the taxable year "in connection with the determination, collection, or refund of any tax." Sub-section 3 is a new provision in the Internal Revenue Code.

Sub-sections 1 and 2 are the same as Section 23(a) (2) of the 1939 Code, 26 U.S.C. § 23(a) (2).

The language of sub-section 3 is broad. It gives the taxpayer the right to deduct for income tax purposes all ordinary and necessary expenses in the contest of any tax whether state or federal.

No question is made as to the reasonableness of the fee. That it was incurred by Gordon Bonnyman as an expense in the determination of the gift tax does not appear to be questioned. That the deficiency assessment was ex-

cessive was established by subsequent events. That the excess would not have been relinquished without contest goes without saying. That the layman knows almost nothing about contest of tax assessment would seem to be common knowledge. Only an attorney admitted to practice before the Tax Court and skilled in that practice could reasonably be expected to know how to conduct a tax contest. Employment of an attorney would, therefore, seem to be an "ordinary and necessary" expense within the meaning of sub-section 3 of section 212 of the 1954 Internal Revenue Code.

Although Gordon Bonnyman was not directly called upon by the Internal Revenue Service to pay the deficiency, he was liable for it under section 1009 of the Internal Revenue Code of 1939 and, therefore, had an interest in the assessment because of the obligation imposed by this statute. He was obligated to pay the attorney's fee, having become so obligated in 1952. He, accordingly, was not an interloper or volunteer in contesting the assessment. That the contest was bona fide was proved by its outcome, as well as by the testimony in the record.

Sub-section 3 of section 212 affords the taxpayer a means of protection to a limited degree. It does not afford full protection. The Government does not pay the attorney's fee. It merely allows the taxpayer to deduct the fee from his gross income. The Government loses only as much of the income tax as would have been allocable to the deduction. To the small taxpayer, sub-section 3 is an inadequate protection. It does, however, confer a great favor on the large taxpayer for the reason that the Government may indirectly pay more than half of the attorney's fee. But regardless of the defenseless position in which it leaves the small taxpayer and the favorable position it accords the large taxpayer, by its language sub-section 3 clearly intends that the attorney's fee may be deducted from gross income.

This interpretation is in accord with section 1.212–1(L), the Treasury Department Regulations issued under section 212 of the 1954 Code, as follows:

"(1) Expenses paid or incurred by an individual in connection with the determination, collection, or refund of any tax, whether the taxing authority be Federal, state, or municipal, and whether the tax be income, estate, gift, property, or any other tax, are deductible. Thus, expenses incurred in connection with the preparation of tax returns or in connection with any proceedings involved in determining the extent of tax liability or in contesting a tax liability are deductible." (Commerce Clearing House Federal Tax Reporter, Vol. 2, par. 2004, page 23012).

The Senate Finance Committee, in reporting on the bill containing sub-section 3 of section 212 of the 1954 Code, stated:

"Paragraph (3) is new and is designed to permit the deduction by an individual of legal and other expenses paid or incurred in connection with a contested tax liability, whether the contest be Federal, State, or municipal taxes, or whether the tax be income, estate, gift, property, and so forth. Any expenses incurred in contesting any liability collected as a tax or as a part of the tax will be deductible." (U. S. Code, Congressional and Administrative News, Vol. 3, 83rd Congress, 2nd Session 1954, Legislative History I.R.C.1954, page 4855).

The Government's contention that the fee was a capital expense and not deductible as an "ordinary and necessary" expense within the meaning of sub-section 3 of section 212 of the 1954 Code, is lacking in merit.

The cases cited by the Government in support of this contention are cases that dealt with section 23(a) (2) of the 1939 Internal Revenue Code, which was the predecessor to sub-sections 1 and 2 of section 212 of the 1954 Code. Those

cases are not controlling of the question in the instant case for the reason that sub-section 3 of section 212 of the 1954 Code specifically provides that deductions shall be allowed for all "ordinary and necessary" expenses paid or incurred in connection with the determination or refund of any tax.

Gordon Bonnyman incurred the attorney's fee in connection with the determination of the gift tax deficiency assessed on account of the gift of the stock by his mother to him.

Plaintiffs also rely on sub-section 2 of section 212 of the 1954 Internal Revenue Code in support of their contention for tax refund. The Court has held that they are entitled to the refund under sub-section 3 of section 212 of the 1954 Code, and what is said on this question is to let the Appellate Court know the views of this Court in the event of an appeal.

■■ Despite the persuasive arguments advanced by plaintiffs in support of their contention, it can be seen at a glance that the subject property was not affected as income-producing property. Its existence was not threatened. No contest was made as to the validity of the tax lien which attached to it. The shares were not adversely claimed. No threat existed that plaintiff's sum total of income producing property was about to be diminished. The only question involved related to the amount of the tax. And whether the tax should have been determined to be too much or too little had no effect on the ability of the shares to produce income. Moreover, a federal tax lien is not the kind of threat that is intended to be protected against by sub-section 2 of section 212 of the 1954 Internal Revenue Code, but those threats which may not only result in a loss of income-producing property from the taxpayer's viewpoint, but also in a tax loss to the Government.

Lykes v. United States, 343 U.S. 118, 72 S Ct. 585, 96 L.Ed. 791, dealt with a case involving the same principles involved here. There the gift tax was contested by the donor of shares of stock as distinguished from the donee in the present case. The attorney's fee was disallowed as an income tax deduction. In 343 U.S. at page 125, 72 S.Ct. at page 589 the court said:

"Legal expenses do not become deductible merely because they are paid for services which relieve a taxpayer of liability. That argument would carry us too far. It would mean that the expense of defending almost any claim would be deductible by a taxpayer on the ground that such defense was made to help him keep clear of liens whatever income-producing property he might have. For example, it suggests that the expense of defending an action based upon personal injuries caused by a tax-payer's negligence while driving an automobile for pleasure should be deductible. Section 23(a) (2), [1939 Act] (which is the same as sub-sections 1 and 2, section 212 of the 1954 Act) never has been so interpreted by us. It has been applied to expenses on the basis of their immediate purposes rather than upon the basis of the remote contributions they might make to the conservation of a taxpayer's income-producing assets by reducing his general liabilities."

Cobb v. Commissioner of Internal Revenue, 6 Cir., 173 F.2d 711, held that the expense of attorney fees were not deductible by the donor under the 1939 Code. The Court said that such expenses were not incurred by the donor either for the production of income or for the management, conservation or maintenance of property. The Court said there was no provision in the law allowing deduction for attorney fees incurred in connection with gift taxes. This opinion was rendered on April 4, 1949.

The decision in the case of Lykes v. United States, 343 U.S. 118, 72 S.Ct.

585, 96 L.Ed. 791, was made on March 24, 1954.

These decisions may have prompted the Congress to enact subsection 3 of section 212 of the 1954 Code.

Plaintiffs say that these cases are distinguishable from the instant case because the instant case deals with the payment of a gift tax by a donee, while the payment of the gift tax in those cases was made by the donor.

In support of this contention plaintiffs rely upon the case of Northern Trust Company v. Campbell, 7 Cir., 211 F.2d 251, 252, which was decided on March 29, 1954. The Court held, in agreeing with the Lower Court, that, "Such expenses are directly and proximately related to the conservation and maintenance of the income producing property of taxpayer's decedent."

This case lends support to plaintiffs' contention but this Court is of the opinion that the principles announced by the Supreme Court in the Lykes case and the Sixth Circuit in the Cobb case are controlling of the facts in the instant case and that there exists no basis for recovery by plaintiffs under the provisions of sub-section 2, section 212 of the 1954 Act.

By way of summary, the Court concludes:

(1) That plaintiff Gordon Bonnyman is entitled to deduct from his gross earned income for calendar year 1954 the sum of $3,487.61. Such sum being the amount he paid Mr. S. Frank Fowler as attorney's fee in 1954 which is deductible under sub-section 3, section 212 of the 1954 Internal Revenue Code, as an "ordinary and necessary" expense, paid in connection with the determination of the gift tax deficiency assessed by the Internal Revenue Service on the gift of 410 shares of Blue Diamond Coal Company stock by Frances Bonnyman to her son, Gordon Bonnyman.

(2) That the payment of the aforesaid fee is not a deductible item under either sub-section 1 or 2 of section 212 of the 1954 Code for the reasons stated in the cases of Cobb v. Commissioner of Internal Revenue, 6 Cir., 173 F.2d 711 and Lykes v. United States, 343 U.S. 118, 72 S.Ct. 585, 96 L.Ed. 791.

Let an order be presented in conformity with the views herein announced.